Matter of New York Asbestos Litig. (2023 NY Slip Op 00402)

Matter of New York Asbestos Litig.

2023 NY Slip Op 00402

Decided on January 31, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: January 31, 2023

Before: Kern, J.P., Oing, Scarpulla, Pitt-Burke, Higgitt, JJ. 

Index No. 190027/20 Appeal No. 17088 Case No. 2022-01064 

[*1]In the Matter of New York Asbestos Litigation.
Ralph Vavala et al., Plaintiffs-Respondents,
A.O. Smith Water Products Co. et al., Defendants, Jenkins Bros, Defendant-Appellant.

Clyde & Co US LLP, New York (Kevin C. McCaffrey of counsel), for appellant.
Weitz & Luxenberg, P.C., New York (Jason P. Weinstein of counsel), for respondents.

Order, Supreme Court, New York County (Adam Silvera, J.), entered December 6, 2021, which denied defendant Jenkins Bros's motion to dismiss the complaint as against it for lack of personal jurisdiction without prejudice to renew when discovery is concluded, and granted plaintiffs' cross motion for jurisdictional discovery, unanimously reversed, on the law, and defendant's motion granted, without costs. The Clerk is directed to enter judgment dismissing the complaint as against defendant Jenkins Bros.
Plaintiff Ralph Vavala and his wife, suing derivatively, commenced this personal injury action in February 2020, asserting claims arising out of plaintiff's exposure to asbestos during his employment with defendant as a steamfitter and welder from 1967 to 1989. Neither side disputes that plaintiff worked with defendant's valves only in Connecticut. Plaintiff alleges that his lung cancer diagnosis resulted from exposure to products containing asbestos, including defendant's valves.
Defendant moved, pursuant to CPLR 3211(a)(8), to dismiss the complaint for lack of personal jurisdiction, and plaintiff cross-moved, pursuant to CPLR 3211(d), for jurisdictional discovery. Supreme Court denied the motion and granted the cross motion. For the reasons that follow, we reverse.
In support of its motion to dismiss, defendant proffered an affidavit and deposition testimony from David J. Boisvert, a former employee who from 1974 to 1986 worked variously as defendant's comptroller, treasurer, vice president of finance, and president. As president, he was responsible for managing the company's day-to-day operations. Boisvert attested that during his entire period of employment defendant's headquarters were located exclusively in Bridgeport, Connecticut. According to Boisvert, the Bridgeport facilities were the "company's nerve center" where defendant conducted the vast majority of its business transactions. Boisvert also explained that for decades prior to his employment with defendant, it had maintained all of its administrative functions, customer service functions, and manufacturing operations in Bridgeport, as well as a distribution warehouse in Fairfield, Connecticut.
Boisvert averred that all of defendant's products were manufactured, sold, and distributed from its two Connecticut locations, explaining that if defendant received orders for the sale of its valves from anywhere in the United States, the orders would all go to the central order department in Bridgeport for confirmation. Furthermore, Boisvert asserted that defendant's assumption of responsibility for those orders required that for each order the central order department issue an acknowledgement from the Bridgeport facility to the customer. Boisvert attested that this procedure was in place both before and after he was employed by defendant.
Boisvert also acknowledged that defendant had maintained an office at 100 Park Avenue in New York City, which served as its executive office in the 1970s[*2]. However, he stated that this office was not where orders were acknowledged and not where the company's day-to-day operations took place. Instead, according to Boisvert, defendant maintained the space primarily because "former company [p]resident, Alfred Yardley, lived in Darien, Connecticut, and wanted office space in nearby New York City." Boisvert also testified that until the closure of 100 Park Avenue in 1980, Jack Spollen, his former boss, would go into New York once or twice a week to be in the office at the same time as Yardley, but spent the rest of the time in Bridgeport.
Boisvert went on to add that defendant maintained a sales office with personnel at 100 Park Avenue until 1980, and that defendant's vice president of sales, Stewart Caddle, was based out of 100 Park Avenue. Caddle was responsible for sales in the New York City area and oversaw defendant's sales force of 12 to 15 people who worked from home around the United States. Boisvert attested that although defendant employed between 300 to 500 people, mainly at the Bridgeport facility, there were never more than 10 employees working in the New York City office. Finally, Boisvert averred that in or around April 1980, about 40 years before the commencement of this action, defendant closed the 100 Park Avenue office and moved its executive office to Norwalk, Connecticut. We note that nothing in the record challenged the bona fides of Boisvert's affidavit or testimony.
A court may exercise specific personal jurisdiction over a nondomiciliary so long as two elements are satisfied: (1) the defendant must have conducted sufficient activities to have transacted business in the state and (2) the claims must arise from those transactions (see Rushaid v Pictet & Cie, 28 NY3d 316, 323 [2016]). The second step of the jurisdictional inquiry requires the existence of an articulable nexus or substantial relationship between the forum transaction and the claim asserted (see Licci v Lebanese Can. Bank, SAL, 20 NY3d 327, 339 [2012]). Although causation is not required, there must be at minimum, "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former" (id.). In other words, jurisdiction will not be present "where the relationship between the claim and transaction is too attenuated" (Johnson v Ward, 4 NY3d 516, 519 [2005]).
The court should have granted the motion to dismiss the complaint as against defendant for lack of personal jurisdiction pursuant to CPLR 302(a)(1) because there was no record evidence suggesting that defendant's minimal activity in New York had an articulable nexus to plaintiff's injury. Similarly, the court should have denied the cross motion because plaintiff did not offer a sufficient basis to justify jurisdictional discovery (see Latimore v Fuller, 127 AD3d 521, 522 [1st Dept 2015]; cf. Peterson v Spartan Indus., 33 NY2d 463, 467 [1974]). To the extent that defendant operated an executive and sales office [*3]out of the 100 Park Avenue office, this limited activity was not substantially related to plaintiff's alleged exposure to asbestos while working with and around defendant's valves in Connecticut and plaintiff does not identify any other activity by defendant in New York that could provide a sufficient nexus to his injury. Instead, all conduct giving rise to plaintiff's claims occurred in Connecticut, as he was not a New York resident, did not purchase or work with defendant's valves in New York, and does not claim to have suffered harm in this State (see Aston v Algoma Hardwoods, Inc., 173 AD3d 408, 408 [1st Dept 2019]; cf. English v Avon Prods., Inc., 206 AD3d 404, 407-408 [1st Dept 2022]). Without an adequate relationship between New York and plaintiff's claims, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State" (Bristol-Myers Squibb Co. v Superior Court of Cal., San Francisco County, 582 US &mdash, 137 S Ct 1773, 1781 [2017]).
Plaintiff also failed to demonstrate that defendant was subject to jurisdiction under CPLR 302(a)(2), which requires that a tortious act be committed within the state. In this case, plaintiff's alleged exposure to defendant's valves — that is, the purportedly tortious act — occurred in Connecticut, not in New York.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 31, 2023