OPINION OF THE COURT
 

 Rosenblatt, J.
 

 Insurance Law § 1213 (c) requires an “unauthorized foreign or alien” insurance carrier to post a bond before filing “any pleading” in a proceeding against it. In the case at hand, the carrier, after being sued in Supreme Court, did not interpose an answer but instead moved to dismiss the complaint as time barred and subject to a defense founded upon documentary evidence. Does the carrier’s motion constitute a “pleading” within the meaning of section 1213 (c) so as to require it to post a bond? We hold yes.
 

 In 1980, defendant Intercontinental Casualty Insurance Company, a Cayman Islands insurance carrier, and Ideal Mutual Insurance Company, a New York insurance carrier, entered into a Quota Share Reinsurance Agreement to reinsure certain workers’ compensation and employers’ liability policies
 
 *526
 
 of Ideal and one of its subsidiaries. Ideal later became insolvent and the New York State Superintendent of Insurance brought a proceeding in Supreme Court to have Ideal placed in liquidation pursuant to article 74 of the Insurance Law. Supreme Court granted the petition, appointed the Superintendent as liquidator, and vested the Superintendent with title to all of Ideal’s property and rights of action.
 

 In February 1998, the Superintendent, as liquidator, commenced an action in Supreme Court against Intercontinental. On behalf of Ideal’s estate, the Superintendent sought to recover some $20.5 million in reinsurance proceeds allegedly outstanding under the Quota Share Reinsurance Agreement. Interposing no answer, Intercontinental moved to dismiss the complaint on Statute of Limitations and documentary evidence grounds (see, CPLR 3211 [a] [1], [5]). Intercontinental also informed the court that it would not object if the court were to treat the motion as one for summary judgment pursuant to CPLR 3211 (c). Arguing that Intercontinental was defending the action on the merits, the Superintendent sought an order compelling Intercontinental to post a bond.
 
 [1]
 

 Supreme Court granted the Superintendent’s application and ordered Intercontinental “to post a bond in the amount of $4,835,333.99, or, in the alternative, to provide a certification from the Commissioner of Insurance that defendant maintains within New York funds or securities in trust or otherwise sufficient and available to satisfy any final judgment against [it].” After Intercontinental failed to post a bond, Supreme Court granted the Superintendent’s motion for judgment, and a judgment in the amount of $4,835,333.99 was entered. Intercontinental appealed, contending that its motion to dismiss was not a pleading and therefore did not trigger the Insurance Law’s requirement to post a bond. In the alternative, Intercontinental argued that Supreme Court set the bond too high. The Appellate Division affirmed. We granted Intercontinental leave to appeal and now affirm.
 

 Insurance Law § 1213 has clear objectives. It imposes accountability on foreign or alien carriers who, although not authorized to do business in this State, issue or deliver insurance policies here
 
 (see,
 
 Insurance Law § 1213 [a]). Moreover, the
 
 *527
 
 enactment provides a local forum for resolving disputes that arise out of those policies (including reinsurance treaties).
 
 [2]
 
 Finally, by requiring a foreign carrier to post a bond at the outset of a proceeding, the statute seeks to assure that a foreign carrier’s funds will be available in this State to satisfy any potential judgment against it from the proceeding
 
 (see,
 
 Insurance Law § 1213 [c];
 
 Curiale v Ardra Ins. Co., supra,
 
 88 NY2d, at 275).
 

 Section 1213 (c) (1) requires any unauthorized foreign or alien carrier to post a bond before it “files any pleading in any proceeding against it.” At the same time, section 1213 (c) (3) excuses a foreign carrier from the bond posting requirement when it files a “motion” to set aside service on the ground that the carrier, or the person upon whom service is made pursuant to section 1213 (b) (3), did not commit the acts in this State that form the predicate for the court’s jurisdiction
 
 (see,
 
 Insurance Law § 1213 [c] [3]).
 

 Intercontinental argues that pre-answer motions to dismiss are not “pleadings.” In support of its position, Intercontinental relies on
 
 Allstate Ins. Co. v Administratia Asigurarilor De Stat
 
 (948 F Supp 285, 295 [SD NY]). There, the court allowed a carrier to file a motion for summary judgment without a bond. The court relied in part on CPLR 3011, entitled “Kinds of pleadings.” The court noted that “[s]ection 3011 provides for a complaint, an answer, a cross-claim against plaintiff, a counterclaim or cross-claim against a not-yet-joined party, interpleader pleadings, third party pleadings, a reply to counterclaim, and a reply to a reply”
 
 (id.,
 
 at 295). Because a motion for summary judgment was not on the list, the court concluded that it was not a “pleading” for purposes of Insurance Law § 1213 (c).
 

 We disagree with the holding in
 
 Allstate.
 
 CPLR 3011 is essentially a “labeling provision”
 
 (see,
 
 Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3011:1, at 625-626). In concluding that a bond is required, we are guided not by nomenclature but by the realities of litigation. We are unwilling to import CPLR 3011’s labeling function into Insurance Law § 1213. To do so would impede section 1213’s objectives.
 

 The Legislature’s choice of words in the exception carved out by subdivision (c) (3) is revealing. By carving out certain “mo
 
 *528
 
 tions” to set aside service, the Legislature obviously contemplated that other “motions” may qualify as pleadings under subdivision (c) (1). Whether any particular motion to dismiss— other than the one carved out — falls within the category of a “pleading” must be determined in accordance with the Legislature’s objectives in enacting the statute.
 
 [3]
 

 Intercontinental argues that allowing it to file a motion to dismiss without posting a bond would not compromise section 1213 (c)’s goals. It contends that “[i]f a complaint is so flawed that it cannot survive a motion to dismiss, there is no possibility that a judgment [for plaintiff! will be entered and no need to ensure that funds are available to satisfy one.” Thus, according to Intercontinental, allowing foreign carriers to forestall filing a bond until they interpose a formal answer is consistent with section 1213 (c)’s objective. We disagree.
 

 Allowing Intercontinental to raise its defenses without posting a bond would compromise section 1213 (c)’s goal of assuring that funds are available in New York to satisfy any judgment in plaintiffs favor. A foreign carrier could wage extensive, costly motion practice, and yet avoid the bond requirement by simply advancing a host of defenses before interposing a formal answer.
 
 [4]
 
 If defeated, the carrier could simply ignore the remainder of the proceedings and relegate the plaintiff to a default judgment with no in-State collateral. This is what the Legislature sought to avoid by enacting section 1213 (c). We therefore read the term “pleading” to include Intercontinental’s motion to dismiss.
 

 The grant of this motion to dismiss would cut the heart out of the plaintiffs case, while a denial could advance it substantially. Moreover, CPLR 3211 (c) allows a trial court to treat a motion to dismiss as one for summary judgment. In doing so, it
 
 *529
 
 allows the court to order an “immediate trial of the issues raised on the motion.” Thus, the motion to dismiss in this case pursuant to CPLR 3211 (a) (1) and (5) could give Intercontinental the practical equivalent of a complete victory — or a severe setback — in the litigation.
 

 Finally, Intercontinental argues that Supreme Court erred in calculating the amount of the bond that Insurance Law § 1213 (c) requires. The statute requires a bond that is “sufficient to secure payment of any final judgment which may be rendered in the proceeding” (Insurance Law § 1213 [c] [1] [A]). The task of fixing the amount necessarily falls within the trial court’s discretion (see,
 
 Curiale v Ardra Ins. Co.,
 
 189 AD2d 217, 221,
 
 affd
 
 88 NY2d 268,
 
 supra).
 
 The calculation must be made at an early stage of the litigation, prior to the resolution of potentially complex factual and legal issues. We conclude from the record that the trial court did not abuse its discretion in setting the amount of the bond that section 1213 would require.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick and Wesley concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . A carrier may comply with section 1213 (c) (1) (A) by either putting up cash or securities or by posting a bond. The amount, to be fixed by the court, must be “sufficient to secure payment of any final judgment which may be rendered in the proceeding” (see, Insurance Law § 1213 [c] [1] [A]).
 

 [2]
 

 .
 
 See,
 
 Insurance Law § 1213 (b);
 
 see generally, Curiale v Ardra Ins. Co.,
 
 88 NY2d 268, 275; Mem of NY Law Rev Commn, at 25-26, Bill Jacket, L 1949, ch 826.
 

 [3]
 

 . Section 1213’s legislative history indicates that defending on the merits requires the posting of a bond (see, Mem of NY Law Rev Commn, at 26-27, Bill Jacket, L 1949, ch 826 [explaining that “defendant should be permitted to appear
 
 specially
 
 to set aside the service without depositing security” (emphasis added)]; 1949 NY Legis Ann, at 252 [“Before an unauthorized insurer may come into the state to defend the action, it must (post a bond)”];
 
 see also,
 
 Hitchcock and Biging,
 
 Tactical Use of State Laws Requiring Unauthorized, Insurers to Post Preanswer Security,
 
 31 Tort & Ins LJ 767, 767 [1996] [explaining that the carrier “may be required to post money, bonds or other security equal in amount to the insurer’s potential exposure before it will be permitted to defend the case on its merits”]).
 

 [4]
 

 . For example, in
 
 Curiale v Ardra Ins. Co.
 
 (88 NY2d, at 272,
 
 supra),
 
 where we held that section 1213 satisfies procedural due process, the parties had conducted six years of pre-answer litigation.