Robert L. v Madison Sq. Boys & Girls Club (2025 NY Slip Op 25187)

[*1]

Robert L. v Madison Sq. Boys & Girls Club

2025 NY Slip Op 25187

Decided on August 13, 2025

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on August 13, 2025
Supreme Court, New York County

Robert L., R. B., N. B. A., FRANK B., TERRENCE B., 
 PETER C., GERALD C., C. C., JOSEPH C., LAWRENCE D., B. D., JONATHAN D., A. G., ROBERTO G., KENNETH G., EDWARD H., 
 JOSEPH M., ROBERT O., ENZO O., RAMOS R., ROBERT S., EDWIN V., Plaintiff,

against
Madison Square Boys & Girls Club, BOYS & GIRLS CLUB OF AMERICA 
 F/K/A BOYS CLUB OF AMERICA, THE ROCKEFELLER UNIVERSITY, Defendant.

Index No. 951259/2021

For Plaintiffs
Jason Paul Amala, Esq., of Pfau Cochran Vertetis Amala PLLC
For BGCA
Michael J. Williams, Esq. of Hurwitz Fine P.C.
For MSBC
Patrick B. Sardino, Esq., of Cozen O'Connor

Hasa A. Kingo, J.

The following e-filed documents, listed by NYSCEF document number (Motion 006) 83, 84, 85, [*2]86 were read on this motion for DISMISSAL
The following e-filed documents, listed by NYSCEF document number (Motion 007) 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 113, 114, 115, 116, 117, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 171, 172, 174 were read on this motion for DISMISSAL.
The following e-filed documents, listed by NYSCEF document number (Motion 008) 110, 111, 112, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141 were read on this motion for DISMISSAL.
Defendant Boys & Girls Clubs of America ("BGCA") moves, pursuant to New York Civil Practice Law and Procedure ("CPLR") §§ 3211(a)(8) and (a)(7), to dismiss the First Amended Complaint in its entirety as against it on the grounds of lack of personal jurisdiction and failure to state a cause of action. BGCA also seeks to strike certain allegations from the complaint.[FN1]

Separately, Defendant Madison Square Boys & Girls Club, Inc. ("MSBC" or "Madison") moves, pursuant to CPLR § 3211(a)(7), to dismiss the First Amended Complaint as against it, but only with respect to plaintiffs Robert L., Peter C., C.C., Lawrence D., A.G., and Edwin V., whose bankruptcy stay has been lifted.
Plaintiffs oppose both motions.
BACKGROUND AND PROCEDURAL HISTORY
This litigation, filed pursuant to Section 214-g of the New York Civil Practice Law and Procedure ("CPLR"), otherwise known as the Child Victims Act ("CVA"), arises from grave allegations of sexual abuse committed over several decades at the East 29th Street facility of MSBC, a longstanding nonprofit youth organization in New York City. Plaintiffs—former child members of MSBC—allege that between approximately 1947 and 1980, they were subjected to sexual abuse by certain individuals associated with the club, most notably Dr. Reginald Archibald, a physician affiliated with Rockefeller University, and Nicholas "Lefty" Antonucci, a basketball coach at MSBC. Plaintiffs contend that MSBC and BGCA failed in their duty to protect children in their care from these predations.
The original summons and complaint was filed electronically on August 11, 2021, naming MSBC, BGCA, and Rockefeller University as defendants. MSBC moved to dismiss on December 15, 2021, and BGCA followed with its own dismissal motion on June 29, 2022. [*3]Before those motions could be adjudicated, MSBC filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York on July 6, 2022. The filing triggered the automatic stay of proceedings under 11 U.S.C. § 362, halting this action as against MSBC.
On August 18, 2023, the bankruptcy court confirmed MSBC's Chapter 11 Plan of Reorganization. Under the plan, abuse claimants were afforded the ability to lift the stay as to their individual claims—solely to pursue recovery from MSBC's non-settling insurers and the compensation trust—by filing a "Notice of Intent to Pursue Abuse Claims." Any such recovery would be limited to insurance proceeds and trust assets; plaintiffs could not execute against MSBC's operating assets.
In this action, six plaintiffs filed the requisite notices: Robert L., Peter C., C.C., Lawrence D., A.G., and Edwin V. As to these individuals, the bankruptcy stay was lifted, and their claims against MSBC resumed. For all other plaintiffs, the stay remains in place.
On August 21, 2023, plaintiffs filed a First Amended Complaint. The amendments incorporated the narrowed posture of the case and continued to assert that both MSBC and BGCA bore responsibility for the historic abuse, either directly or vicariously, through agency principles. On June 11, 2024, this court denied MSBC's prior dismissal motion as moot in light of the amended pleading and procedural developments.
The present motions followed: BGCA renewed its jurisdictional and substantive challenges; MSBC moved to dismiss the six active plaintiffs' claims for failure to plead sufficient facts regarding notice and foreseeability.

ARGUMENTS

BGCA contends, as a threshold matter, that the court lacks personal jurisdiction over it. In the Affirmation of Michael J. Williams and the accompanying memorandum of law, BGCA points to its federal congressional charter, its incorporation in the District of Columbia, and its principal place of business in Georgia. It argues that it functions solely as a national service and resource organization, without any ownership interest in, or day-to-day control over, the operations of local member clubs such as MSBC. BGCA underscores that plaintiffs do not allege that BGCA itself undertook any act in New York giving rise to their claims, as required for specific jurisdiction under CPLR § 302(a), and that general jurisdiction under CPLR § 301 is plainly lacking. BGCA further asserts that, even if jurisdiction existed, the amended complaint fails to state a viable negligence claim because BGCA owed no duty to plaintiffs absent operational control or a custodial relationship, and notes that other jurisdictions, including California, have dismissed analogous claims against it for the same reasons.
MSBC's motion is more circumscribed, directed only at the six plaintiffs whose bankruptcy stay has been lifted. In the Affirmation of Patrick B. Sardino and reply submissions, MSBC argues that each of these plaintiffs' negligence claims fails because the amended complaint does not allege specific facts showing that MSBC had actual or constructive notice of [*4]either Dr. Archibald's or Mr. Antonucci's alleged propensity to engage in sexual abuse. MSBC contends that the lone notice-related allegation—a purported complaint in the 1950s to a part-time swim director by his son—cannot, as a matter of law, establish imputable knowledge to MSBC, both because the alleged recipient lacked managerial authority and because the alleged content was too vague to make future abuse foreseeable. MSBC asserts that without notice, there can be no negligent hiring, retention, or supervision claim, and that the court must look only to the "four corners" of the complaint in assessing sufficiency.
Plaintiffs, in opposition to both motions, maintain that BGCA purposefully availed itself of the privilege of conducting activities in New York through its relationship with MSBC: collecting dues, imposing membership requirements, issuing operational guidelines, and reaping reputational benefits from MSBC's programs. They argue that these facts, coupled with the alleged agency relationship between BGCA and MSBC, are sufficient at the pleading stage to support jurisdiction and a duty of care. As to MSBC, plaintiffs contend that their allegations—when read in light of favorable inferences and in the context of historical concealment of abuse—are enough to survive dismissal, and that any gaps should be filled through discovery. They invoke CPLR §§ 3212(f) and 3211(d), urging that the motions be denied to allow them to obtain jurisdictional and merits discovery, including records of communications between BGCA and MSBC, and MSBC's historical personnel and complaint files.

DISCUSSION

Applicable Standards Under CPLR § 3211
A motion to dismiss pursuant to CPLR § 3211(a)(7) addresses the legal sufficiency of the pleadings. On such a motion, the court must afford the complaint a liberal construction, accept the facts alleged therein as true, and accord the plaintiff the benefit of every possible favorable inference (Leon v Martinez, 84 NY2d 83, 87—88 [1994]; JF Capital Advisors, LLC v Lightstone Group, LLC, 25 NY3d 759, 764 [2015]; 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 151—152 [2002]). The court's role at this stage is limited to determining whether the facts as alleged fit within any cognizable legal theory; it is not to assess the ultimate merits of the claim.
However, these liberal pleading principles do not relieve a plaintiff of the obligation to plead facts with sufficient particularity to give the court and the opposing party fair notice of the transactions or occurrences intended to be proved and the material elements of each cause of action (CPLR § 3013; Mid-Hudson Val. Fed. Credit Union v Quartararo & Lois, PLLC, 31 NY3d 1090, 1091 [2018]). Bare legal conclusions, vague or conclusory allegations, and factual assertions that are flatly contradicted by documentary evidence are not entitled to the presumption of truth (Godfrey v Spano, 13 NY3d 358, 373 [2009]; Maas v Cornell Univ., 94 NY2d 87, 91 [1999]; Garber v Bd. of Trustees of State Univ. of NY, 38 AD3d 833, 834 [2d Dept 2007]). When a pleading fails to allege facts with the requisite specificity, or consists only of conclusory statements devoid of factual support, dismissal for failure to state a cause of action is warranted (see Fowler v American Lawyer Media, Inc., 306 AD2d 113 [1st Dept 2003]; [*5]DiMauro v Metropolitan Suburban Bus Auth., 105 AD2d 236, 239 [2d Dept 1984]; Sheriff v Murray, 33 AD3d 688 [2d Dept 2006]; Schuckman Realty v Marine Midland Bank, N.A., 244 AD2d 400, 401 [2d Dept 1997]; O'Riordan v Suffolk Ch., Local No. 852, Civ. Serv. Empls. Assn., 95 AD2d 800 [2d Dept 1983]).
Under CPLR § 3211(a)(8), the plaintiff bears the ultimate burden of demonstrating a basis for personal jurisdiction (Hopstein v Cohen, 143 AD3d 859, 860 [2d Dept 2016]). Where a defendant rebuts jurisdiction with competent evidence, the plaintiff must come forward with non-conclusory facts sufficient to demonstrate a basis for jurisdiction under CPLR § 301 or CPLR § 302 (see generally Fischbarg v Doucet, 9 NY3d 375, 381 [2007]; Paterno v Laser Spine Inst., 24 NY3d 370, 377 [2014]).
I. BGCA's Motion — Lack of Personal Jurisdiction
BGCA's primary argument, as set forth in the affirmation of Michael J. Williams and its supporting memorandum, is that plaintiffs have failed to allege facts establishing either general or specific jurisdiction. BGCA is incorporated in the District of Columbia, headquartered in Atlanta, Georgia, and is organized under a federal congressional charter. It asserts that it functions solely as a national service organization, offering resources and guidelines to independently incorporated local clubs, but without operational control over those clubs' premises, personnel, or day-to-day policies.
The complaint alleges, in general terms, that BGCA "owned, controlled, operated, and directed" MSBC, required it to pay membership dues, and implemented certain membership requirements. However, as BGCA persuasively notes, these allegations are unaccompanied by factual detail linking BGCA's alleged conduct to the plaintiffs' abuse claims, or demonstrating that BGCA engaged in purposeful activity in New York giving rise to the claims (see CPLR § 302[a][1]; see also Williams Aff., ¶¶ 3—4, 11—12).
The documentary evidence submitted—including BGCA's congressional charter, governance documents, and incorporation records (Exhibits C, D, E, and F to Williams Aff.)—reflects BGCA's legal separateness from local clubs such as MSBC. BGCA also highlights that other jurisdictions have considered analogous allegations and dismissed BGCA for lack of control over local clubs (see, e.g., M.V. v. Boys & Girls Clubs of America, No. 22LBCV00968 [Cal. Super. Ct., Los Angeles Cty. July 1, 2024]; John Doe v. Boys & Girls Club of Central New Mexico, No. 22-01296308 [Cal. Super. Ct., Orange Cty. Apr. 15, 2024]; J.J. v. Boys & Girls Clubs of America, 2023 WL 9318161 [Cal. Super. Ct., Los Angeles Cty. Dec. 20, 2023]).
In opposition (Amala Aff. ¶¶ 15—17), plaintiffs contend that personal jurisdiction lies because BGCA allegedly purposefully availed itself of the benefits of New York through its affiliation with MSBC, deriving revenue from membership dues and imposing operational requirements upon the local club. These assertions, however, largely echo the conclusory allegations of the complaint and do not set forth particularized acts by BGCA within New York [*6]that gave rise to the injuries at issue. Although plaintiffs urge that discovery will uncover such facts, CPLR § 3211 requires that they first make a prima facie showing of jurisdiction before such discovery may be ordered. As the Court of Appeals has cautioned, jurisdictional discovery is not available in the absence of a sufficient start (Peterson v Spartan Indus., 33 NY2d 463, 467 [1974]), and here, no such start has been made. It is well settled that speculative assertions are insufficient to defeat a motion to dismiss for lack of personal jurisdiction (see Breakaway Courier Corp. v Berkshire Hathaway, Inc., 192 AD3d 501, 501—502 [1st Dept 2021], lv denied 37 NY3d 916 [2021]; Coast to Coast Energy v Gasarch, 149 AD3d 485, 487 [1st Dept 2017]), and the court will not accord weight to conjecture that BGCA "must have" conducted business in New York.
In, Grosso v. Cy Twombly Found., 237 AD3d 427 (1st Dept 2025), Appellate Division, First Department, reaffirmed that speculative claims regarding a defendant's contacts with New York do not suffice to defeat motions to dismiss for lack of jurisdiction. The court rejected unsubstantiated assertions that a foreign defendant conducted business or attended events in New York, relying on precedent that requires concrete jurisdictional facts.
Similarly, in Trotman v. Priority Auto Inc., 231 AD3d 1075 (2d Dept 2024), the Appellate Division, Second Department, emphasized the narrow scope of jurisdiction over foreign defendants whose ties to New York were minimal—in that case, limited to servicing a vehicle that was later involved in an injury. The court relied on Fanelli v. Latman, 202 AD3d 758 (2d Dept 2024) as the controlling precedent.
Further reinforcing this principle, Cosom v. Mack Trucks, Inc., 2025 NY Slip Op 50025(U) (Bronx County Jan. 9, 2025), applied precedents such as Matter of New York Asbestos Litigation 212 AD3d 584, 586 (1st Dept 2023) and Aybar v. Aybar, 37 NY3d 274, 289 (2021) to hold that foreign corporations' mere registration to do business in New York amounts to consent to service but not to general jurisdiction. The court found no jurisdiction where the defendant's product was manufactured and transferred outside New York before causing injury, emphasizing that jurisdiction requires a meaningful nexus between the claim and the defendant's New York-related activities.
Collectively, these decisions establish that jurisdictional assertions demand concrete, particularized evidence linking the defendant to the harm or to New York State, rejecting generalized or speculative allegations as insufficient.[FN2]
Plaintiffs' pleadings fail to satisfy that [*7]exacting standard.
Accordingly, plaintiffs have failed to establish a jurisdictional basis over BGCA.
II. BGCA's Motion — Failure to State a Claim
Even assuming arguendo that jurisdiction could be found, the court agrees with BGCA's alternative argument under CPLR § 3211(a)(7) that plaintiffs fail to state a claim. The First Amended Complaint's negligence claims rest on the premise that BGCA had a duty to protect plaintiffs from sexual abuse occurring at MSBC. Yet, as the Appellate Division, First Department, has emphasized, a defendant must have had the ability and opportunity to control the tortfeasor to owe such a duty (see Diaz v New York Downtown Hosp., 99 NY2d 542, 544 [2002]; Pulka v Edelman, 40 NY2d 781, 783—784 [1976]).
BGCA's evidence, unrebutted by specific facts, shows that it did not hire, supervise, or control MSBC's employees or volunteers, and did not own or operate MSBC's facilities. Plaintiffs' assertion of an "agency" relationship is conclusory and unsupported by particularized facts (see Ehrens v Lutheran Church, 385 F3d 232, 235—236 [2d Cir 2004] [no vicarious liability where church did not control local ministry's operations]). In Nellenback v. Madison County, 2025 NY Slip Op 02263 (Apr. 17, 2025), the New York Court of Appeals, in a 6-1 decision authored by Chief Judge Rowan D. Wilson, affirmed summary judgment for Madison County in a CVA negligent supervision claim. The Court clarified that mere speculation or assertions that an employer "should have known" about an employee's dangerous conduct, absent concrete evidence of prior misconduct, warnings, or indications of risk, do not establish negligent supervision liability. Citing Brandy B. v. Eden Cent. Sch. Dist., 15 NY3d 297 (2010), the Court emphasized that generalized references to norms or practices cannot substitute for specific proof that the defendant had notice or opportunity to prevent the harm. Moreover, even allegations of lax practices fail if unsupported by evidence showing deviation from the reasonable standard of care prevailing at the time.
Thus, the pleadings fail to allege a cognizable duty owed by BGCA to plaintiffs, warranting dismissal.
III. MSBC's Motion — Negligence and Notice Requirements
MSBC seeks dismissal of the claims asserted by plaintiffs Robert L., Peter C., C.C., Lawrence D., A.G., and Edwin V., contending that the First Amended Complaint fails to plead actual or constructive notice of the sexual abuse perpetrated by Dr. Reginald Archibald and former MSBC employee Mr. Antonucci. MSBC characterizes the pleading as conclusory, asserting that it relies on generalized accusations of institutional failure without identifying specific incidents or credible facts showing knowledge of either abuser's misconduct.
This court is unpersuaded. When measured against the liberal pleading standard of CPLR § 3211(a)(7), and with the benefit of every favorable inference afforded to plaintiffs, the First Amended Complaint more than adequately alleges that MSBC knew or should have known of the danger posed by both Archibald and Antonucci.
The pleading recounts in vivid and disturbing detail a decades-long pattern of abuse. Plaintiffs allege that beginning as early as the 1950s, Dr. Archibald—while conducting physical examinations of MSBC youth in conjunction with Rockefeller University—performed invasive genital and rectal examinations that were medically unnecessary, prolonged, and sexual in nature. These examinations allegedly took place on MSBC premises or in programs MSBC facilitated. Crucially, the complaint alleges that MSBC staff, including a swim director and other individuals tasked with oversight of the boys' programs, were informed directly by children about Archibald's conduct. The allegations further assert that parents, too, raised concerns with MSBC personnel, yet no investigation or protective measures followed. Instead, Archibald was permitted unfettered access to generations of vulnerable boys, cementing a culture of silence.
With respect to Antonucci, plaintiffs allege that he held significant positions within MSBC's aquatics and camp programs, placing him in direct, unsupervised contact with minors. The complaint describes repeated incidents—occurring in swimming pools, locker rooms, and camp cabins—where Antonucci engaged in grooming behaviors, inappropriate touching, and isolation of particular boys from the group. Plaintiffs allege that such conduct was open and notorious within MSBC facilities, observed by staff and fellow campers alike, yet went unaddressed by those in a position to intervene.
The law imposes on organizations like MSBC a duty to safeguard children in their care from foreseeable harm (Mirand v City of New York, 84 NY2d 44, 49 [1994]). That duty is breached when an entity knows, or in the exercise of reasonable care should know, of an employee's propensity for harmful conduct and fails to take appropriate preventive action (Kenneth R. v Roman Catholic Diocese of Brooklyn, 229 AD2d 159, 162 [2d Dept 1997]). Constructive notice is established where the dangerous condition—in this context, the pattern of abusive conduct—was visible and apparent and existed for a sufficient period to allow discovery and remediation (Gordon v American Museum of Natural History, 67 NY2d 836, 837 [1986]).
Here, plaintiffs' allegations, if proven, would satisfy both actual and constructive notice. They do not rely on vague generalities, but on specific instances of misconduct, the identities and roles of MSBC personnel who were allegedly informed, and the institutional structures that allowed these predators to operate unchecked. Whether the individuals to whom complaints were made qualify as supervisory employees whose knowledge may be imputed to MSBC is a factual [*8]question ill-suited to resolution at the pleading stage (Doe v Intercontinental Hotels Group, PLC, 193 AD3d 410, 411 [1st Dept 2021]).
Moreover, the allegations reflect a systemic failure to act despite longstanding warning signs. The law does not require plaintiffs, at this juncture, to establish their claims by evidence, only to plead facts that, if proven, entitle them to relief. In historical abuse cases such as this—where information about internal investigations, disciplinary records, or prior complaints is uniquely within the defendant's possession—New York courts have been particularly cautious in granting dismissal before discovery (see Doe v Ascend Charter Schs., 181 AD3d 648, 649 [2d Dept 2020]).
MSBC's reliance on Hartford Roman Catholic Diocesan Corp. v Interstate Fire & Cas. Co. (199 F Supp 3d 559, 596 [D Conn 2016], aff'd 905 F3d 84 [2d Cir 2018]) for the proposition that the knowledge of a non-supervisory employee cannot be imputed to an organization is misplaced in the present procedural posture. The First Amended Complaint alleges that MSBC personnel who received complaints about Archibald's and Antonucci's conduct included supervisory figures—such as a swim director and camp administrators—who held positions of authority over youth programming and staff. Whether those individuals had the specific authority to take corrective action or a duty to escalate reports is a factual question not susceptible to resolution on the pleadings (see Doe, 193 AD3d at 411, supra). Plaintiffs allege that such complaints and observable misconduct occurred in MSBC's own facilities, within the line of sight of staff charged with safeguarding children, creating at minimum a factual dispute as to imputed knowledge.
This stands in contrast to the BGCA allegations, which were dismissed because plaintiffs failed to plead particularized acts in New York by BGCA personnel that bore a nexus to the abuse. MSBC, by contrast, is alleged to have had on-site supervisory staff who directly witnessed or were informed of conduct giving rise to the claims.
MSBC's reliance on Liang v Rosedale Group Home (19 AD3d 654 [2d Dept 2005]) and Lisa P. v Attica Cent. Sch. Dist. (27 AD3d 1080 [4th Dept 2006]) is similarly unavailing. In those cases, the allegations of prior misconduct were either temporally remote, isolated, or too vague to permit an inference of a propensity for abuse. Here, plaintiffs allege a decades-long pattern of similar misconduct—by two separate perpetrators—occurring in plain view within MSBC-controlled programs, and repeatedly brought to the attention of MSBC staff. The complaints, as pleaded, are neither fleeting nor speculative; they are embedded in a factual narrative describing where the abuse occurred, the nature of the acts, the roles of those informed, and the organizational context in which no remedial action was taken. These allegations, if proven, are sufficient to establish both actual and constructive notice.
While it is true, as MSBC argues, that on a CPLR § 3211(a)(7) motion the court's review is generally confined to the four corners of the complaint and documentary evidence incorporated therein (Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]), that principle does not assist MSBC here. The First Amended Complaint itself contains sufficiently detailed allegations to withstand dismissal without reliance on extrinsic affidavits or deposition [*9]testimony. The additional materials plaintiffs submitted merely illustrate and provide context to the pleaded facts; they are not the sole basis of the claims.
Notably, plaintiffs invoke CPLR § 3212(f) to request denial or deferral of both defendants' motions pending discovery. While CPLR § 3212(f) applies to summary judgment rather than pre-answer motions to dismiss, CPLR § 3211(d) permits the court to order discovery where facts essential to justify opposition "may exist" and the plaintiff has made a "sufficient start" toward establishing a viable claim. The court's earlier dismissal of the claims against BGCA rested on plaintiffs' failure to make that sufficient start as to BGCA's jurisdictional and substantive liability. The posture is different here. As to MSBC, plaintiffs have made far more than a "sufficient start"; they have alleged detailed facts placing MSBC's own staff, in supervisory capacities, at the center of notice and institutional inaction. This is precisely the type of factual dispute that warrants development through discovery rather than termination at the pleading stage (see Peterson v Spartan Indus., 33 NY2d 463, 467 [1974]).
Applying these principles, the court concludes that plaintiffs have pleaded viable claims for negligence, negligent hiring, retention, and supervision, and related causes of action under the CVA. The detailed allegations of repeated abuse, observable misconduct, and ignored warnings—spanning decades—are sufficient to withstand dismissal.
Accordingly, MSBC's motion to dismiss these plaintiffs' claims is denied in its entirety, and the matter shall proceed to discovery so that the factual record on notice, institutional response, and protective measures may be fully developed.
Conclusion
In conclusion, the claims against BGCA are dismissed for lack of jurisdiction and failure to state a claim. By contrast, the claims against MSBC survive in their entirety, as plaintiffs have pleaded sufficient facts to support viable causes of action for negligence, negligent hiring, retention, and supervision, and statutory duties under the CVA. The matter shall proceed to discovery as to MSBC.
Accordingly, it is hereby:
ORDERED that Motion Sequence No. 006 is denied as moot; and it is further
ORDERED that Motion Sequence No. 007, by defendant Boys & Girls Clubs of America, is granted, and the claims against said defendant are dismissed; and it is further
ORDERED that the Clerk is directed to enter judgment in favor of defendant Boys & Girls Clubs of America accordingly; and it is further
ORDERED that the Clerk of the Court shall amend the caption by striking the name of defendant Boys & Girls Clubs of America to reflect the dismissal of all claims against said defendant; and it is further
ORDERED that Motion Sequence No. 008, by defendant Madison Square Boys & Girls [*10]Club, Inc., is denied; and it is further
ORDERED that defendants Boys & Girls Clubs of America and Madison Square Boys & Girls Club shall serve a copy of this order with notice of entry upon plaintiffs within 20 days of entry; and it is further
ORDERED that the action shall continue as against the remaining defendants, and that the parties shall conduct discovery in accordance with the applicable Case Management Orders and on such dates as shall be scheduled by the court.
This constitutes the decision and order of the court. 
DATE 8/13/2025
HASA A. KINGO, J.S.C.

Footnotes

Footnote 1:The court notes that Motion Sequence No. 006 is denied as moot in light of plaintiffs' filing of the First Amended Complaint, which supersedes the original pleading in all respects. Consequently, the court's determinations on Motion Sequence Nos. 007 and 008 address the substantive dismissal arguments advanced by both MSBC and BGCA with respect to the First Amended Complaint.

Footnote 2:The United States Supreme Court's decision in Fuld v. Palestine Liberation Organization, 606 U.S. ___ (2025) further reinforces this principle. In Fuld, the Supreme Court reaffirmed that the exercise of personal jurisdiction over an out-of-forum defendant must be anchored in conduct that bears a "meaningful relationship" to the forum and to the sovereign's legitimate policy interests. There, Congress had expressly tied federal jurisdiction to narrow, well-defined factual predicates involving the defendants' U.S.-based activities or payments linked to acts of terrorism injuring U.S. nationals. The Supreme Court emphasized that such jurisdictional provisions were permissible because they were "suitably limited," directly related to the United States, and provided clear notice to the defendants that their conduct could subject them to litigation in U.S. courts.
By contrast, plaintiffs here identify no comparable New York-based conduct by BGCA that is either the subject of the claims or otherwise demonstrates purposeful availment of this forum. Fuld underscores that jurisdiction cannot rest on attenuated or tangential contacts divorced from the events giving rise to the claims. Just as the Supreme Court in Fuld upheld jurisdiction only where the nexus to the forum was direct, substantial, and legislatively recognized, this court declines to exercise jurisdiction over BGCA where plaintiffs have failed to allege any deliberate, forum-directed activities giving rise to their causes of action.